IN THE COURT OF APPEALS OF TENNESSEE
AT  KNOXVILLE
Assigned on Briefs December 10, 2014

## IN RE JESSLYN C.

**Appeal from the Juvenile Court for Sullivan County**
**No. J14613     David W. Tipton,  Judge**

_____

**No. E2014-01385-COA-R3-JV-FILED-MARCH 31, 2015**

_____

This parenting dispute arose upon the parents' competing motions for modification of the existing permanent parenting plan as to the parties' minor child.  The trial court previously had entered a permanent parenting plan order on May 11, 2010, designating the mother as the primary residential parent and awarding equal residential co-parenting time to both parents in an alternating weekly schedule.  Following a hearing, the trial court found that a material change in circumstance warranting modification of the residential co-parenting schedule had occurred since entry of the permanent parenting plan.  The trial court further found that reducing the father's co-parenting time to alternate weekends during the academic year, while reversing this co-parenting schedule during the summer break, was in the child's best interest.  The father has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Jerry J. Fabus, Jr., Johnson City, Tennessee, for the appellant, Kelvin C.

Myers N. Massengill, II, Bristol, Tennessee, for the appellee, Jacqueline D.

### OPINION

I.  Factual and Procedural Background

The parties were never married but are the parents of one minor child, Jesslyn C. ("the Child"), who was born in March 2009.  The respondent, Kelvin C. ("Father"), initially filed a petition to establish parentage of the Child on August 13, 2009, with the

Sullivan County Juvenile Court ("trial court"). Following DNA testing, the trial court entered an order on January 14, 2010, *inter alia*, declaring Father to be the biological father of the Child, designating Mother as the primary residential parent, and awarding visitation to Father "as agreed by the parties."[1] The trial court subsequently entered an agreed permanent parenting plan on May 11, 2010. This plan maintained Mother's designation as the primary residential parent and granted the parents joint decision-making authority. The plan also set forth a residential co-parenting schedule that afforded equal time with the Child to each parent on a rotating basis that involved the parents' exchanging the Child every one to three days.

On October 25, 2010, Mother obtained an *ex parte* order of protection against Father from the Sullivan County Chancery Court. The Chancery Court subsequently entered a bridging order directing that the *ex parte* order remain in effect through November 22, 2010, and transferring the matter to the trial court. Prior to Mother's petition being heard in the trial court, Father filed a motion for contempt on November 19, 2010, alleging that Mother was not following the provisions of the permanent parenting plan and requesting "increased visitation and permanent change of custody." On the same day, Mother filed a motion to modify the permanent parenting plan, requesting that Father's co-parenting time with the Child be reduced.

Following a hearing conducted on November 30, 2010, the trial court directed the parties to participate in mediation by order entered December 20, 2010. As to the order of protection, the court directed that the maternal grandparents would assist in facilitating exchanges of the Child and that the parties would have no contact with each other. The parties reached a mediated agreement on December 22, 2010. In accordance with this agreement, the parties exchanged the Child at the Bristol, Tennessee, Police Department, and they continued this arrangement through the date of trial.

The mediated agreement was ultimately approved and memorialized by the trial court as an agreed permanent parenting plan, entered on April 19, 2011. According to this parenting plan, Mother remained as the Child's primary residential parent, and the parties continued to share equal co-parenting time (182.5 days each annually). The day-to-day co-parenting residential schedule became an alternating weekly schedule. Moreover, the parties continued to enjoy joint decision-making authority.

In 2012, the parties filed competing "motions" averring that material and substantial changes had occurred since entry of the second permanent parenting plan in

---

[1]This case was heard in the Juvenile Court by Judge William A. Watson prior to the 2014 proceedings.

April 2011.[2]  Each parent respectively requested that the other parent's co-parenting time be reduced.  No further action was taken on the motions in 2012 or 2013, and the parties continued co-parenting under the precepts of the April 2011 permanent parenting plan.

On March 28, 2014, Father filed an "amended motion" to modify the permanent parenting plan, alleging, *inter alia*, that Mother had changed residences at least nine times since 2009, had caused several judgments to be entered against her for unpaid rent, and was dating a convicted felon.  Father requested that he be named the primary residential parent with sole decision-making authority.  Mother subsequently filed an answer and "counter-motion" to modify the permanent parenting plan on April 24, 2014.  Mother requested that Father's day-to-day co-parenting time be limited to alternate weekends and two non-consecutive weeks during the summer.  She alleged that, *inter alia*, Father had harassed her and exhibited verbally abusive behavior and that he had warrants issued against him for unpaid rent and driving on a revoked license.[3]

Following a hearing conducted on May 27, 2014, the trial court found that a material change in circumstance had occurred since entry of the April 2011 permanent parenting plan that warranted a change in the parties' residential co-parenting schedule.  The court specifically found that the Child had matured to five years of age and was poised to begin attending kindergarten in August 2014.  The court also found that the parties had experienced difficulty cooperating as co-parents while the Child attended daycare.  The court expressly did not find that a material change in circumstance affecting the Child had occurred that would warrant changing the primary residential parent from Mother to Father.

In a final order entered July 7, 2014, the trial court, *inter alia*, reduced Father's day-to-day co-parenting time during the academic year to alternate weekends, inverting this schedule during the summer break to limit Mother's co-parenting time to alternate weekends except for the first and last weeks of the break, when the Child would reside with Mother.  In total, the modification resulted in the Child residing 233 days annually with Mother and 132 days annually with Father.  The trial court maintained Mother as the primary residential parent and maintained the parties' joint decision-making ability.  Father timely appealed.

---

[2]Our Supreme Court has recognized that Tennessee Code Annotated § 36-6-405 (2014) "appears to require the filing of a petition for modification rather than a motion as the initial pleading in this situation."  *Armbrister v. Armbrister*, 414 S.W.3d 685, 688 n.4 (Tenn. 2013).  As in *Armbrister*, "neither party has raised this issue, and it is not before us in this case."  *See id.*

[3]Also in April 2014, Mother again obtained an *ex parte* order of protection against Father from the Chancery Court.  The Chancery Court transferred the matter to the trial court.  After hearing testimony in conjunction with the instant action, the trial court in its final order dismissed the order of protection.

## II.  Issue Presented

Father presents one issue on appeal, which we have restated as follows:

Whether the trial court erred by finding that it was in the best interest of the Child to maintain Mother as the primary residential parent and modify the residential schedule in the parties' permanent parenting plan by reducing Father's co-parenting time with the Child.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

Regarding an action to modify a permanent parenting plan, particularly as to the parents' residential parenting schedule, our Supreme Court has recently explained:

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007).  Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick [v. Shoemake]*, 90 S.W.3d [566,] 570 [(Tenn. 2002)]; *Hass [v. Knighton*, 676 S.W.2d [554,] 555 [(Tenn. 1984)].
>
> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007).  Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.

4

1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[lies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. *Eldridge*, 42 S.W.3d at 88.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

## IV. Modification of Residential Parenting Schedule

Father contends that the trial court erred by "awarding the Mother primary custody" of the Child. He specifically argues that the trial court committed error by (1) denying his plea to be named the primary residential parent in place of Mother and (2) modifying the residential schedule to reduce his co-parenting time from 182.5 days to 132 days per year. Mother contends that the trial court properly ruled that she should remain the primary residential parent and properly weighed the statutory best interest factors to modify the residential co-parenting schedule. We determine that the evidence does not preponderate against the trial court's finding that a material change in circumstance affecting the best interest of the Child had occurred warranting a modification of the residential co-parenting schedule but not a modification of the primary residential parent designation. We further determine that the testimony and evidence support the extent of the trial court's modification of the residential co-parenting schedule.

As a threshold matter, we note some confusion in Father's assertion on appeal that the parties had "stipulated" at trial to a material change in circumstance and that the only matter before the trial court was therefore modification of the permanent parenting plan. Neither party clearly distinguishes between the standard for a material change in circumstance required to warrant a change in the primary residential parent, or "custody," and the somewhat lesser standard required to warrant only a modification in the residential co-parenting schedule. *See* Tenn. Code Ann. §§ 36-6-101(a)(2)(B)-(C); *Armbrister*, 414 S.W.3d at 703 (comparing the standard for an action to modify custody

to the "'very low threshold for establishing a material change of circumstances' when a party seeks to modify a residential parenting schedule") (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007)). Mother certainly did not stipulate that a change in primary residential parent was warranted. She instead requested a modification of the co-parenting schedule without any modification in custody. The trial court made this distinction clear at the close of trial, stating that it "[did not] find the evidence is sufficient to change the primary residential parent."

## A. Material Change in Circumstance

In any proceeding requiring a trial court to make a custody determination regarding a minor child, the court must make that determination "on the basis of the best interest of the child." Tenn. Code Ann. 36-6-106(a) (Supp. 2013) (delineating factors the court shall consider when taking into account the child's best interest). Upon a petition to modify custody from one parent to the other parent, "the 'threshold issue' is whether a material change in circumstances has occurred after the initial custody determination." *See Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002) (quoting *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)). Upon a trial court's finding that a material change in circumstance has occurred, "it must then be determined whether the modification is in the child's best interests." *Kendrick*, 90 S.W.3d at 570 (citing Tenn. Code Ann. § 36-6-106); *see generally Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007) ("In approaching questions of custody and visitation, the needs of the children are paramount; the desires of the parents are secondary.").

Regarding the standard a petitioning parent must meet to prove a material change in circumstance sufficient for consideration of whether custody modification is in the best interest of the child, as Father sought to prove in the case at bar, Tennessee Code Annotated § 36-6-101(a)(2)(B) (2014) provides in relevant part:

(B)     If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

> (i)    In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination.

*See also Armbrister*, 414 S.W.3d at 702-03.

In comparison, the standard a petitioning parent must meet to prove a material change in circumstance sufficient for consideration of whether modification of the residential co-parenting schedule is in the best interest of the child, as each parent sought separately to prove in this case, is set forth in subsection 36-6-101(a)(2)(C), which provides:

> (C)    If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

(Emphasis added to highlight comparison.) *See also Armbrister*, 414 S.W.3d at 704 ("[W]e conclude that when the issue is modification of a residential parenting schedule, section 36-6-101(a)(2)(C) provides the governing standard for determining whether a material change in circumstances has occurred.").

The trial court in the instant action found in its final judgment "that a material change in circumstances has occurred which merits a change in the provisions of the current parenting plan." As noted previously, the court expressly found that this material change in circumstance did not warrant a change in designation of the primary residential parent. In explaining its determination at the close of the July 2014 hearing, the trial court stated:

> It's probably for the better that you are in here at this time because we got school starting and that always is kind of a change of circumstances in a case. That probably is the biggest change of circumstance that I see

7

because I don't think either one of you have proved a lot of change in circumstance. You've proved that both of you have got financial problems. . . . Both of you seem like you're trying to do the best you can do.

Upon our careful and thorough review of the record, we determine that the evidence does not preponderate against the trial court's finding that the Child's maturation from two to five years old and her readiness to begin attending school constituted a material change in circumstance pursuant to Tennessee Code Annotated § 36-6-101(a)(2)(C) (including "changes relating to age" among the "significant changes in the needs of the child over time" that may constitute a material change in circumstance when the issue is "modification of the court's prior decree pertaining to a residential parenting schedule"). In addition, the trial court found at the close of trial that the parents had demonstrated difficulty in cooperating with each other and coordinating their efforts while the Child was alternating weeks between Mother's home and Father's home. The court specifically stated:

I don't think either party has done anything really bad wrong that's just, the only way a week at a time can generally work is the parties to trust each other and get along and you all aren't doing it that well.

This difficulty in adhering to the residential parenting schedule set forth in the April 2011 permanent parenting plan, assigned to be the responsibility of both parties by the trial court, also contributed to the court's finding that a material change in circumstance affecting the Child's best interest had occurred. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C).

Father's contention that the trial court erred by failing to find that a material change in circumstance merited a change in the primary residential parent is primarily grounded in his argument that Mother had demonstrated instability by moving several times since entry of the permanent parenting plan and by incurring judgments for unpaid rent. Mother responds by asserting that she has moved for valid reasons, is making payments on the judgments against her for rent arrearages, and is now living in a home owned by her mother where she has to pay only utilities and her half of the property taxes. Mother indicated that her name had been placed on the deed of the home as a co-owner. Mother also presented evidence at trial that Father had been served with several warrants for unpaid rent since entry of the parenting plan, although she does not dispute that Father has since paid these obligations in full. As the court noted, each party had experienced financial difficulty.

As part of this financial difficulty, the trial court also observed that each party was respectively caring for several children. The Child at issue in this action was born

following an extramarital affair between the parties. At the time of trial, Father had been married for fourteen years and had three children born of the marriage living with him and his wife. Father acknowledged that his affair with Mother during the time the Child was conceived had caused problems in his marriage, but he maintained that his home and marriage were stable at the time of trial. Father had been employed for approximately a year as a certified nursing assistant, but he had injured his back while working six months before trial and was collecting Workers' Compensation benefits. Meanwhile, his family had been living in subsidized housing. Mother had recently finalized her divorce from her ex-husband, who resided in Mexico. She had two children born of her marriage who were living with her in the home she co-owned with the Child's maternal grandmother. Mother acknowledged that her paramour, M.C., was also residing with her. Mother was employed as a physical therapy assistant and was attending school part-time, having completed half of a certificate of master esthetician for skin care.

Father also argues that Mother's cohabitation with M.C. constituted a material change in circumstance. He notes in particular that M.C. is a convicted felon. At trial, Mother acknowledged that M.C. had served jail sentences in the past for an arson conviction and violation of an order of protection obtained by his ex-wife in 2010. She asserted, however, that M.C. was a "good man" who was "great" with her children and had never threatened harm to her or her children. Father did not present any testimony or evidence to indicate that M.C. had ever endangered the Child or anyone living with Mother. Although at the close of trial, the court expressed concern regarding the presence of M.C. in Mother's home, the court found that Father had not demonstrated any risk of harm to the Child due to M.C.'s presence.

We note that although the trial court stated that the parties had no "paramour provision" in the April 2011 permanent parenting plan, the plan does contain a "special provision" that "there shall be no non-family overnight guests, male or female, unless it is the spouse of one of the parties." Father did not raise the existence of this provision in the April 2011 plan as an issue at trial or on appeal. We therefore find that he has waived any objection to the trial court's stated finding that the presence of M.C. in Mother's home did not violate the parenting plan. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) ("One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal.").

We conclude that the evidence does not preponderate against the trial court's finding that although a material change in circumstance warranting a modification of the residential co-parenting schedule had occurred, it did not rise to the level required for a

change in the primary residential parent. *See Armbrister*, 414 S.W.3d at 703 (noting the lower threshold required for a finding of a material change of circumstance when considering a modification of a residential parenting schedule as opposed to a change in the primary residential parent).

## B. Best Interest of the Child

Having found that a material change in circumstance had occurred that affected the Child in regard to the residential schedule, the trial court was then required to apply the statutory "best interest" factors enumerated in Tennessee Code Annotated § 36-6-106(a) to determine whether a modification of the residential co-parenting schedule was in the best interest of the Child. *See Armbrister*, 414 S.W.3d at 705; *see also Kendrick*, 90 S.W.3d at 570. The version of Tennessee Code Annotated §36-6-106(a) (Supp. 2013)[4] in effect at the time the instant action was commenced provided in relevant part:

> (a)  In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> > (1)  The love, affection and emotional ties existing between the parents or caregivers and the child;
> >
> > (2)  The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other

---

[4]The General Assembly has amended Tennessee Code Annotated § 36-6-106(a) (2014), effective July 1, 2014, to enumerate fifteen factors for the trial court's consideration when making a custody arrangement. *See* 2014 Tenn. Pub. Acts Ch. 617 (S.B. 1488). According to the preamble of Public Acts Chapter 617, the legislature's intent in amending the statute was to alleviate inconsistency and confusion caused by "different factors pertaining to judicial review of custodial arrangements and the establishment of residential schedules for minor children" that "differ[ed] slightly in their specifics," particularly among subsections 36-6-106(a), 36-6-404(b), and 36-6-108. *See id.* Because the instant action was commenced prior to July 1, 2014, the previous version of the statute controls our review of the trial court's analysis.

necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3)     The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4)     The stability of the family unit of the parents or caregivers;

(5)     The mental and physical health of the parents or caregivers;

(6)     The home, school and community record of the child;

(7)     (A)     The reasonable preference of the child, if twelve (12) years of age or older;

        (B)     The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8)     Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .

(9)     The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10)    Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider

any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

Similarly, for "[a]ny final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child," Tennessee Code Annotated § 36-6-404(a) (2014) provides that an appropriate parenting plan shall:

(1)     Provide for the child's changing needs as the child grows and matures, in a way that minimizes the need for further modifications to the permanent parenting plan;

(2)     Establish the authority and responsibilities of each parent with respect to the child, consistent with the criteria in this part;

(3)     Minimize the child's exposure to harmful parental conflict;

(4)     Provide for a process for dispute resolution, before court action, unless precluded or limited by § 36-6-406; . . .

(5)     Allocate decision-making authority to one (1) or both parties regarding the child's education, health care, extracurricular activities, and religious upbringing. The parties may incorporate an agreement related to the care and growth of the child in these specified areas, or in other areas, into their plan, consistent with the criteria in this part. Regardless of the allocation of decision making in the parenting plan, the parties may agree that either parent may make emergency decisions affecting the health or safety of the child;

(6)     Provide that each parent may make the day-to-day decisions regarding the care of the child while the child is residing with that parent;

(7)     Provide that when mutual decision making is designated but cannot be achieved, the parties shall make a good-faith effort to resolve the issue through the appropriate dispute resolution process, subject to the exception set forth in subdivision (a)(4)(F);

(8)     Require the obligor to report annually on a date certain to the obligee, and the department of human services or its contractor in Title IV-D cases, on a form provided by the court, the obligor's

income as defined by the child support guidelines and related provisions contained in chapter 5 of this title; and

(9)     Specify that if the driver license of a parent is currently expired, canceled, suspended or revoked or if the parent does not possess a valid driver license for any other reason, the parent shall make acceptable transportation arrangements as may be necessary to protect and ensure the health, safety and welfare of the child when such child is in the custody of such parent.

Regarding residential provisions for each child, the version of Tennessee Code Annotated § 36-4-404 (2010) applicable to the instant action[5] further provided:

(b)     Any permanent parenting plan shall include a residential schedule as defined in § 36-6-402.  The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child.  The child's residential schedule shall be consistent with this part.  If the limitations of § 36-6-406 are not dispositive of the child's residential schedule, the court shall consider the following factors:

(1)     The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2)     The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

---

[5]The General Assembly has also amended Tennessee Code Annotated § 36-6-404(b) (2014), effective July 1, 2014, in keeping with the companion amendment to Tennessee Code Annotated § 36-6-106(a) described in the previous note.  *See* 2014 Tenn. Pub. Acts Ch. 617 (S.B. 1488).  Tennessee Code Annotated § 36-4-404(b) now states, "If the limitations of § 36-6-406 are not dispositive of the child's residential schedule, the court shall consider the factors found in § 36-6-106(a)(1)-(15)," referring to the fifteen best interest factors now enumerated in § 36-6-106(a).  *See id.*  As previously noted, the earlier version of the statute in effect at the time this action was commenced controls our review of the trial court's analysis.

(3)     The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4)     Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7)     The love, affection, and emotional ties existing between each parent and the child;

(8)     The emotional needs and developmental level of the child;

(9)     The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10)    The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14)   The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15)   Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16)   Any other factors deemed relevant by the court.

The trial court in its final judgment, *inter alia*, set forth clear parameters for the co-parenting residential schedule, effecting a modification in which the Child would reside primarily with Mother during the academic year and with Father during the summer months when school is not in session, except for a week at the beginning and week at the end of summer when the Child would reside with Mother. The Child is to spend alternate weekends with Father during the academic year, as she is to spend alternate weekends with Mother during the summer. The court also clarified an equal division of time during the Christmas holidays that had not been provided in the original plan and clarified how the parents were to handle other holiday weekends. The parties are to continue exchanging the Child at the Bristol, Tennessee Police Department, and the court allowed for family members to continue facilitating the exchanges, as they had in the past. Apart from concerns regarding child support payments and federal income tax exemptions not relevant to this appeal, the court's modification to the permanent parenting plan was limited to its modification of the residential co-parenting schedule.

As both parties note, the trial court did not in its final judgment set forth a factor-by-factor analysis of its consideration of the Child's best interest in formulating the modification to the co-parenting residential schedule. The court did, however, at the close of trial explain its rationale with a clear focus on the changes needed due to the Child's attaining school age and the parents' demonstrated difficulty and dissatisfaction as they attempted to coordinate the alternating weekly schedule they had been following for approximately three years. Father asserts on appeal that the trial court erred by failing to properly consider three best interest factors that he argues should have weighed in his favor: continuity of care for the Child, stability of each parent's home life, and the character and behavior of others living in the home. *See* Tenn. Code Ann. § 36-6-106(a)(3), (4), (9). Father's arguments in regard to these three factors are essentially the same as his argument that the trial court should have found a material change in circumstance that warranted a change in the primary residential parent. Upon our review of the trial court's findings, we determine that the court properly addressed the continuity of care each parent could provide, the approximately equal difficulty each parent had

15

experienced financially in maintaining a stable home, and the presence of others in each home, including Father's wife and other children and Mother's paramour and other children. Father's additional argument that he can provide a more stable home because he is still married to the wife to whom he was married when he fathered this Child with Mother is unavailing.

Pursuant to the April 2011 permanent parenting plan, the Child alternated weeks between Mother's home and Father's home, with exchanges occurring each Tuesday morning, excepting special holiday provisions. In considering the Child's best interest, the trial court noted that the increased activities and changing schedule that would accompany the Child's entrance into school would require particularly well-orchestrated cooperation and coordination between the parents if the Child were to continue alternating weeks during the academic year. At the close of trial, the court found that the parties had not been cooperating in this regard all "that well." As the court further determined, the residential schedule needed to be modified to facilitate the Child's school attendance and participation in activities with as little negative effect on the Child from the parents' difficulty cooperating as possible.

The trial court first explicitly found that both parents had demonstrated their love for and close attention to the Child's needs. S*ee* Tenn. Code Ann. §§ 36-6-106(a)(1) (Supp. 2013); 36-6-404(b)(7) (2010). Having also found the stability and other relevant factors in each parent's home to be relatively equal, the court then concentrated particularly on "[e]ach parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents . . . ." *See* Tenn. Code Ann. § 36-6-106(a)(10) (Supp. 2013); *see also* Tenn. Code Ann. § 36-6-404(b)(3) (2010) (providing that in determining the residential schedule, the trial court should consider the "willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child; . . ."). The court thus fashioned a residential schedule it considered conducive to the parties' future ability to cooperate while they facilitate the Child's school attendance and participation in activities.

Upon our thorough review of the record, we determine that the trial court carefully considered the applicable statutory factors to modify the residential co-parenting schedule in order to place the Child "'in an environment that will best serve [her] physical and emotional needs.'" *See In the Matter of T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046 at *16 (Tenn. Ct. App. Feb. 12, 2014) (quoting *In re T.C.D.*, 261 S.W.3d 734, 742-43 (Tenn. Ct. App. 2007)). We have also reviewed the trial court's judgment

modifying the permanent parenting plan order and detailing each parent's respective residential co-parenting time, and we affirm it in all respects.

## V. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. This case is remanded to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, Kelvin C.

_____
THOMAS R. FRIERSON, II, JUDGE